FILED27 JAN '12 14:40USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FLOYD TRAVIS ROPER,              )
                                 )     Civil No. 09-1079-JO
        Petitioner,              )
                                 )
    v.                           )
                                 )     OPINION AND ORDER
MARK NOOTH,                      )
                                 )
        Respondent.              )

Thomas J. Hester
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

     Attorney for Petitioner

John R. Kroger
Attorney General
Andrew D. Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

     Attorneys for Respondent

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his convictions and sentence for sodomy and sexual abuse. For the reasons set forth below, the Petition for Writ of Habeas Corpus [1] is denied, and Judgment is entered dismissing this action with prejudice.

## BACKGROUND

On October 24, 2002, the Lincoln County Grand Jury returned a secret indictment charging petitioner with seven counts of Sodomy in the First Degree and four counts of Sexual Abuse in the First Degree. Respondent's Exhibit 102. A jury convicted petitioner on all counts except one count of Sexual Abuse in the First Degree and the sentencing court imposed a sentence totaling 375 months. Respondent's Exhibit 101.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without written opinion. State v. Roper, 194 Or.App. 327, 95 P.3d 756 (2004). Petitioner did not seek review by the Oregon Supreme Court. Respondent's Exhibits 103-104.

Petitioner filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief. Roper v. Hill, Malheur County Circuit Court Case No. 05-06-4467M. On appeal, the Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. Roper v. Hill, 224

2 - OPINION AND ORDER

Or.App. 686, 200 P.3d 180 (2008), rev. denied, 346 Or. 213, 208 P.3d 963 (2009); Respondent's Exhibits 120-125.

On September 10, 2009, petitioner filed this action. In his Petition for Writ of Habeas Corpus, he raises the following ground for relief:

> Ground One: Post Conviction Court violated petitioner's 14th Amendment right to due process in a post conviction hearing in not granting a continuance. Petitioner was not prepared to move forward because evidence gathering was incomplete due to inadequate post conviction counsel and petitioner was exercising his only Oregon remedy to present his pro se issues to the court through Notice pursuant to Church v. Gladden.
>
> Supporting Facts: Petitioner was denied a fair post conviction proceeding. He requested additional time to get affidavits from witnesses. This request was placed in a Church v. Gladden. He had requested his attorney to amend his post conviction to include these issues but he refused. In Oregon, once inmates are afforded counsel, they cannot make pro se changes to their petitions while counsel is appointed.
>
> First, the Church v. Gladden motion was filed the day of Post Conviction Trial and inmate enjoys "Mail Box Rule" that states documents sent by inmate to the Court are filed the day that [they] enter the corrections mail system.
>
> Second, Notice pursuant to Church v. Gladden was filed on 4/26/2006 and Post Conviction General Judgment was filed 5/1/06. Barring a challenge from the Defendant, nothing hindered the Post Conviction Court from amending the General Judgment to include[] the post conviction issues that w[]ere raised in the Notice pursuant to Church v. Gladden.
>
> Third, Notice pursuant to Church v. Gladden is included in the appellate record in petitioner's opening brief and discussed in respondent's brief.
>
> In the Church v. Gladden the petitioner requested the court consider additional issues that were not plead in the formal petition. One of these issues included a claim that his trial counsel was ineffective in failing to subpoena character witnesses. See Motion pursuant to Church v. Gladden. It was only through Church v. Gladden that an Oregon pro se

3 - OPINION AND ORDER

petitioner can compel his appointed post conviction counsel to perform a task or raise an issue with an Oregon Court. The Court would then, order the attorney to perform the task or dismiss the motion. Petitioner needed his post conviction attorney to investigate where the witnesses lived so he could get affidavits from them stating what they would have said in trial had his counsel requested a subpoena.

The appointed criminal trial attorney was ineffective because he stated that the witnesses would have to spend their own money to testify in his behalf. This was not true. Oregon law provides that out of state witnesses who are subpoenaed to testify in criminal trials are afforded monetary compensation. There was no physical evidence tying Petitioner to the crimes and petitioner's truthfulness or believability was on trial, these witnesses were necessary to persuade the jury that he was telling the truth. The witnesses would have testified as to the good character of the Petitioner.

There was no reasonable trial strategy in not requesting the testimony of the witnesses. Calling the witnesses would not have been detrimental to his defense. Petitioner had no felony record or other negative facts that would have made the defense strategy frivolous.

Where there was no physical evidence to support his conviction, and petitioner's truthfulness or veracity was pivotal to his defense, not providing the character witnesses was ineffective assistance of counsel. Had character witnesses been called, positive traits of the petitioner may have swayed the jury verdict.

Post Conviction Court erred in denying Notice pursuant to Church v. Gladden motion which included a claim alleging that counsel was ineffective in not subpoenaing character witnesses.

Respondent asks the Court to deny relief on the Petition on the basis that: (1) claims attacking procedural issues in post conviction proceedings are not cognizable in federal habeas; and (2) any underlying ineffective assistance of trial counsel claim for failure to subpoena character witnesses is procedurally defaulted.

4 - OPINION AND ORDER

Citing 28 U.S.C. §2254(b)(1)(B)(i)&(ii), petitioner contends he is excused from exhausting the subject ineffective assistance of counsel claim because he was denied an adequate state corrective process in which to litigate it, and consequently, the claim is not procedurally defaulted. In the alternative, he contends that any procedural default is excused because the PCR court caused the default and he suffered prejudice as a result.

## DISCUSSION

### I. Unargued and Newly Raised Claim

Petitioner alleges in his *pro se* Petition that the PCR court violated his right to due process under the Fourteenth Amendment when it refused to grant him a continuance. He contends a continuance was necessary to secure affidavits from witnesses to support his claim that his trial attorney rendered ineffective assistance of counsel when he failed to subpoena positive character witnesses on Roper's behalf at trial. In his counseled supporting memorandum, however, Roper does not brief this PCR court error claim, but rather the underlying ineffective assistance of counsel claim itself. Counsel suggests Roper "inartfully" raised the ineffective assistance of counsel claim in his Petition. The Court disagrees. A fair reading of the Petition makes clear petitioner intended to raise a claim alleging PCR court error. The ineffective assistance of counsel claim briefed in his supporting memorandum is a fundamentally different legal claim and is not

5 - OPINION AND ORDER

properly before the court. See Rule 2 of the Rules Governing § 2254 Cases (requiring all claims to be stated in the Petition, itself); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)("A Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . as a statement of additional grounds.") Moreover, on habeas review, a petitioner must show that the state court determination of his claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Given petitioner has not briefed the due process PCR court error claim in his supporting memorandum, he has failed to meet the burden of proof for habeas relief under § 2254(d) as to this claim. Accordingly, relief on this claim must be denied.

In addition, for the reasons set forth below, even had petitioner properly raised the briefed ineffective assistance of counsel claim in his Petition, the Court would deny it on the basis it is procedurally defaulted and petitioner cannot satisfy the exceptions to procedural default.

II. **Exhaustion and Procedural Default**.

    A. **Standards**.

A habeas petitioner must exhaust his claims by fairly

6 - OPINION AND ORDER

presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518

7 - OPINION AND ORDER

U.S. 152, 162 (1996); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 337 (1992); <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986).

    B.    <u>Analysis</u>.

Petitioner failed to fairly present to the Oregon Supreme Court in a procedural context in which its merit would be considered, an ineffective assistance claim alleging his trial counsel failed to subpoena character witnesses on his behalf at trial. Nevertheless, petitioner contends this Court may review the claim on the merits because he is excused from the exhaustion requirement, and therefore, the claim is not procedurally defaulted. Alternatively, petitioner asserts he can satisfy the cause and prejudice exception to excuse any default.

    1.    <u>Exceptions to the Exhaustion Requirement</u>

As a preliminary matter, the referenced ineffective assistance of counsel claim does not need to be excused from the exhaustion requirement because it is technically exhausted through petitioner's procedural default since the time for petitioner to return to state court to exhaust his remedies on this claim has expired. <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1139 (9th Cir. 2007). "In cases such as this, where a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted." <u>Id</u>. (quoting

8 - OPINION AND ORDER

Coleman, 501 U.S. at 735 n.1). Thus, the relevant inquiry with this claim is whether the procedural default can be excused. See id. That issue is addressed below.

Moreover, even assuming the exhaustion requirement were applicable, pursuant to 28 U.S.C. § 2254(b)(1)(i),(ii), exhaustion is excused if the petitioner cannot present his claim because there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. Here, petitioner contends that on April 24, 2006, the day before his PCR trial, he signed a Notice Pursuant to Church v. Gladden, 244 Or. 308, 417 P.2d 993 (1966) advising the PCR court that his appointed attorney had failed to adequately communicate with him and refused to raise certain issues in an amended petition, including the subject ineffective assistance of counsel claim. Brief in Support [34], p. 13. Petitioner asked the PCR court to appoint him new counsel or to order his current attorney to adequately litigate petitioner's claims. Id. In addition, Petitioner sought a continuance to locate witnesses and further investigate his claims. At the hearing, the PCR court denied as untimely petitioner's Church v. Gladden notice and ordered the trial to go forward. The court gave petitioner the option of proceeding *pro se* or with assistance of counsel and petitioner opted to proceed with counsel. Petitioner now argues that:

9 - OPINION AND ORDER

> [i]n [his] case, the post-conviction judge rendered the [state corrective] process inadequate by refusing to either grant [him] new counsel or a continuance when he so requested and where the record affirmatively established that the lawyer, with whom [he] was forced to proceed, had not even reviewed the Exhibits with him.

Id. at 18.

Contrary to these assertions, however, Oregon clearly sets forth a corrective process for raising ineffective assistance of counsel claims such as the one at issue here. Indeed, even at his deposition take on October 26, 2005, petitioner was given wide latitude to raise a claim that his trial counsel failed to secure material character witnesses to testify on his behalf at trial:

> Q. Okay. Other than the other claims in your petition here, they're all legal questions, do you have anything else you want to add today against your attorney's representation of you at trial?
>
> A. There was a couple of different things I asked him to bring up that he never brought up.
>
> Q. Like what, for example?
>
> A. [Petitioner then discusses his attorney's failure to bring up the fact that as a truck driver he had a logbook that would have proven some of the victim's statements were false]
>
> * * *
>
> Q. What other things did your attorney fail to bring [up]?
>
> A. [Petitioner then discusses his attorney's alleged failure to emphasize the importance of his ex-wife's acute sense of smell]
>
> * * *

10 - OPINION AND ORDER

>    Q. Okay. Anything else you think your attorney should have brought up?
>
>    A. At this moment, I can't think of anything, it doesn't mean that there isn't something that I might remember later.

Respondent's Exhibit 111, pp. 11-14.

Moreover, given petitioner was aware of counsel's alleged failure to call the character witnesses from the time of the guilt phase portion of his trial, he cannot explain how the PCR court prevented him from raising the subject ineffective assistance of counsel claim in his original *pro se* petition. Similarly, given appointed PCR counsel filed his counseled "formal" petition on September 7, 2005, petitioner cannot excuse his failure to use the approximately seven month period between the filing of the counseled petition and his PCR trial to further investigate and obtain information from the witnesses, to notify the PCR court of his attorney's refusal to raise certain claims, and/or to file a timely Church v. Gladden notice.

At core, petitioner seeks to substitute allegations of ineffective assistance of PCR counsel, an insufficient basis for excusing his failure to exhaust or for establishing cause to excuse his procedural default, with an unconvincing assertion that the PCR court prevented him from raising what is a relatively routine ineffective assistance of trial counsel claim when it denied his Church notice and request for a continuance as untimely.

11 - OPINION AND ORDER

Accordingly, in light of the foregoing and the Court's careful review of the record, it cannot deem the PCR court's refusal to grant petitioner's eleventh hour Church v. Gladden notice and request for a continuance constituted an absence of available state corrective process or rendered Oregon's system for presenting ineffective assistance of counsel claims inadequate to protect petitioner's rights. Therefore, even assuming the exhaustion requirement were applicable, the Court would conclude: that petitioner has failed to demonstrate he should be excused from satisfying it, that he failed to fairly present the subject ineffective assistance of counsel claim to the Oregon courts in a procedural context in which its merit would be considered, and that the claim is now procedurally defaulted.

2.  **Exceptions to Procedural Default**

As noted above, to overcome a procedural default, a petitioner must establish either (1) "cause for the default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989)(citations omitted). Cause to excuse procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. Coleman, 501 U.S. at 753; Murray, 477 U.S. at 488. The prejudice that is required as part of the showing of

12 - OPINION AND ORDER

cause and prejudice to overcome procedural default is "actual harm resulting from the alleged error." Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).

Petitioner contends the PCR court's refusal to grant his Church notice and continue his hearing preventing him from fairly presenting his ineffective assistance of counsel claim during his state court proceedings. However, for the reasons previously discussed, petitioner cannot show that the PCR court's actions constituted an "objective factor external to the defense" preventing him from including the claim in his original PCR petition, raising it during his deposition, and/or bringing it to the court's attention via the filing of a timely Church notice. Petitioner did not file his motion until the day before his hearing and at least six months after he became aware that his post-conviction counsel had not raised the subject ineffective assistance of counsel claim in the amended petition. Under these circumstances the PCR court's denial of petitioner's Church notice and request for a continuance was within the court's discretion and reasonable. See, Church v. Gladden, 244 Or. 308, 417 P.2d 993 (1996)(a petitioner must notify the court of his attorney's failure to follow a legitimate request to allege a claim at the "first opportunity"); Temple v. Zenon, 124 Or.App. 388, 862 P.2d 585 (1993)(post-conviction court reasonably denied motion to amend

13 - OPINION AND ORDER

petition for relief after petitioner allowed more than three months to elapse before complaining to the court).

Moreover, the Court notes that at his trial, the prosecution essentially conceded that petitioner was perceived favorably in his community. For example, in her closing argument, the prosecutor commented on the testimony of petitioner's sister-in-law:

> Michelle Roper: Michelle Roper testified that, "Well, in the four or five times that she saw the Roper family interacting over a period of one to two years, she didn't see anything."
>
> Okay. the person that was living in the house, [the victim's] mother, didn't see anything. So how is Michelle Roper going to offer any insights that her mother can't? Her own mother can't; and the defendant's wife. So is it really shocking that she didn't see anything?
>
> With -- how do you fit in these sort of witnesses? There seems to always be these. And I look at my notes here. And I wrote, "otherwise a really great guy defense." Okay?
>
> How do you know? How do you know? If we accept the notion that you can't pick a sex offender off the street, that you can't tell by looking at somebody if they have an inclination or if they're abusing children, then what difference does it make what -- how do you fit these witnesses in then? If you accept that notion and everyone did before, that it could be anyone?
>
> Maybe the prosecutor -- prosecuting the, you know, the priests, the Catholic priests that do this; and they start marching in the folks during that didn't know. It can be anyone.
>
> You have these heinous crimes that you see on TV. What is the first thing they do? They go out and they start interviewing the neighbors. You have this neighbor come strolling out in a house coat and they put a microphone in the face. And again, there is this heinous thing

> that happened. They turn to them, you know, "Did you know so-and-so?"
>
> "Well, yes. Never in a million years would I have guessed he would have done something like this."
>
> That's always the response. He was such a wonderful father. He was such a wonderful friend. He was such a good neighbor. You don't know. That's the point.
>
> What distinguishes this defendant is he didn't have to leave his house to find his victim. His victim was in his own house. It was his own daughter.

Transcript, pp. 411-13.

Similarly, in his closing argument, defense counsel emphasized the following:

> The State kindly concedes that, other than this, that Mr. Roper is a pretty decent guy. We hear that he completes his National Guard duty; that he gets security clearance so he can be a money counter at the casino. And then he gets a promotion.
>
> He's apparently always employed whether it be from Taco Bell, to JC Market, to being a merchandiser with Coca-Cola, to moving to another town; he gets a job at the mill. He loses that job he gets -- he goes out and gets himself free training, gets a job driving a truck. And some company trusts him with their truck and their trade all over the country.

Id. at 417-18.

The Court's review of the record reveals that petitioner wanted his trial attorney to call additional character witnesses to "explain what kind of person [he is]":

> Because basically I feel this is all off of character witnesses brought in from Montana and from Kansas as well that he never brought. I think these people could have testified to my character and stated that I was that I wouldn't I wouldn't have done things like that. They knew what my wife was like, they knew what I was like,

15 - OPINION AND ORDER

and they knew what my life was like when I was in Montana.

Respondent's Exhibit 118 at 12-13. The Court finds petitioner cannot show that this type of character evidence would have added significantly to the "basically a good guy" narrative that was already presented to the jury at his trial.

Accordingly, the Court concludes that petitioner cannot demonstrate that the PCR court's denial of his Church notice and request for a continuance constituted an "objective factor external to the defense that impeded" petitioner's ability to present his ineffective assistance of counsel claim to the state court (cause) or resulted in "actual and substantial disadvantage" to petitioner (prejudice). Petitioner's request for an evidentiary hearing to further develop the facts surrounding his adequacy of the state court process and cause and prejudice arguments is DENIED.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus [1] is DENIED, and this case is DISMISSED, with prejudice. In addition, the court finds that petitioner has not made a substantial showing of the denial of a constitutional right

///

///

///

///

pursuant to 28 U.S.C. § 2253(c)(2). Accordingly, this case is not appropriate for appellate review.

IT IS SO ORDERED.

DATED this __27__ day of January, 2012.

                                                Robert E. Jones
                                                United States District Judge